FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| GOODWILL INDUSTRIES<br>INTERNATIONAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 1:09cv 1364 |
| | ) | LO/TCB |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CYBER2MEDIA, INC., | ) | |
| OVERSEE.NET and | ) | |
| GOODWILL.COM (*in rem*), | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

COMES NOW Plaintiff, Goodwill Industries International, Inc. ("Goodwill"), and for its cause of action against Cyber2Media, Inc., Oversee.net and, in the alternative, <goodwill.com> (*in rem*), states as follows:

### THE PARTIES, JURISDICTION AND VENUE

1.      This action arises under Sections 32(1), 39, and 43(a) and (d) of the Federal Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114(1), 1121 and 1125(a), (d), 1051 *et seq.*, and under related state statutes as well as the common law of the Commonwealth of Virginia and/or other states.

2.      This Court has jurisdiction over the action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338. The amount in controversy exceeds the sum and value of $75,000, exclusive of interest and costs. Venue is predicated on 28 U.S.C. § 1391(b). Those causes which arise under the common law or

13079859.2

statutes of the Commonwealth of Virginia and/or other states are pendent or ancillary causes under 28 U.S.C. § 1338(b) and 1367(a).

3.    On information and belief, Defendants Cyber2Media, Inc. ("Cyber2Media") and Oversee.net transact business or are otherwise found within the Eastern District of Virginia and are within the jurisdiction of this Court for purpose of service. The unlawful acts committed by Cyber2Media and Oversee.net, as hereinafter alleged, have been and are, in whole or in part, conceived, carried out and made effective within the Eastern District of Virginia. The interstate trade and commerce described hereinafter is carried out in part within this District.

4.    In the alternative, Goodwill asserts an *in rem* action under the provisions of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") against the Internet domain name <goodwill.com> (the "Infringing Domain Name").

5.    The Infringing Domain Name is confusingly similar to Goodwill's federally registered service and trademarks, including, *inter alia,* "GOODWILL". The registrant of the domain name, identified in Network Solutions' "whois" database as Cyber2Media, has registered and is using the domain name in a bad faith effort to confuse the public in violation of the ACPA. Goodwill seeks an order compelling Cyber2Media and Network Solutions, LLC ("Network Solutions") to transfer registration of the Infringing Domain Name to Goodwill.

6.    Goodwill is a not-for-profit corporation duly organized and existing under the laws of the Commonwealth of Massachusetts with principal offices at 15810 Indianola Drive, Rockville, MD 20855.

13079859.2

2

7.      On information and belief, Cyber2Media is located at 8900 West Olympic Blvd., Suite 100, Beverly Hills, CA 90211, and transacts business in the Eastern District of Virginia, both directly and through agents, subsidiaries and others acting on its behalf, including but not limited to Network Solutions.

8.      On information and belief, Oversee.net is located at 515 S. Flower Street, Suite 4400, Los Angeles, CA 90071, and  transacts business in the Eastern District of Virginia, both directly and through agents, subsidiaries and others acting on its behalf, including but not limited to Network Solutions.

9.      In the event that Goodwill is not able to obtain *in personam* jurisdiction over Cyber2Media, Oversee.net or any other party who would have been a defendant in a civil action due to lack of requisite minimum contacts with the Commonwealth of Virginia, and in the alternative, this Court also has jurisdiction over the Infringing Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A).  Pursuant to the terms of that section, the owner of a trademark "may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if:

> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark office ...; and

> (ii) the court finds that the owner –

>> (I) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under paragraph (1) [of the ACPA]; or

>> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by:

(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

(bb) publishing notice of the action as the court may direct promptly after filing the action." 15U.S.C. §1125(d)(2)(A).

10.     Pursuant to 15 U.S.C. § 1125(d)(2)(C)(i), a domain name is deemed to have its situs in the judicial district in which the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located. Network Solutions, LLC ("Network Solutions") is the registrar for the Infringing Domain Name. Attached hereto as Exhibit A is a true and correct copy of a print-out from the Network Solutions' "whois" website for the Infringing Domain Name. Network Solutions' principal place of business is located in this judicial district at 13861 Sunrise Valley Dr., Suite 300, Herndon, VA 20171. Consequently, the situs of the Infringing Domain Name is properly deemed to be within this judicial district.

11.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (d).

## BACKGROUND

12.     Goodwill is one of the largest not-for-profit providers of employment and training services for people with physical, mental and emotional disabilities and other disadvantaging conditions, such as welfare dependency, homelessness, and lack of education or work experience, through approximately one hundred and sixty (160) affiliated member organizations throughout the United States ("local members").

13.     Goodwill provides leadership and a variety of services to its local members, who carry out Goodwill's mission: namely, to enhance the quality and dignity of life for

13079859.2

individuals, families and communities on a global basis through the power of work, eliminating barriers to opportunity for people with special needs, and facilitating empowerment, self-help and service.

14.    Goodwill strengthens autonomous GOODWILL members for future growth by promoting world-class mission and business practices, fostering collaboration, and protecting and advancing the GOODWILL brand.

15.    Goodwill relies in part on contributions from the public to fulfill its mission to the community.    For example, Goodwill and/or its local members accept donations of clothing, household goods, automobiles, furniture, and financial contributions to help fund their services.  The public has come to associate Goodwill with the act of donating such items to charity.  In 2008, the total number of donors (including repeat donors) exceeded 64 million individuals.

16.    Goodwill operates a website at the domain name <goodwill.org>.  Many of Goodwill's local members also operate websites which include the GOODWILL name, such as <dcgoodwill.org>.

17.    Goodwill's local members operate approximately 2,300 retail stores throughout North America and the <shopgoodwill.com> website, all of which offer a variety of donated goods, including clothes, shoes, accessories, household goods and books under the GOODWILL Marks (as defined below).  The retail outlets fund employment services such as training and employment outplacement services for disabled and disadvantaged persons.  In 2008, Goodwill's local members had retail sales in excess of 2 billion dollars, and collectively provided employment and training services to more than 1,500,000 individuals.

13079859.2

5

18.    The December holiday season generally is one of the busiest and most important times of the year for Goodwill.  During this time, many people, motivated by the spirit of the season or a desire to act before the end of the calendar year for tax purposes, make charitable donations to Goodwill in the form of monetary contributions and/or donations of clothing, household goods and other items.  Thus, Cyber2Media's and Oversee.net's actions are particularly harmful to Goodwill at this season, as consumers looking to donate to Goodwill may be mislead or diverted by the website at the Infringing Domain Name to make contributions to competing organizations.

19.    Goodwill was organized in 1902 and incorporated in 1910.  Goodwill adopted the name GOODWILL in 1916 to identify the services performed by and on behalf of its local members and has used the name continuously and without interruption to the present day.

20.    Goodwill is the owner of all right, title and interest in and to the following federal registrations, which presently are valid and subsisting in law (the "GOODWILL Marks").

    a.    **Registration No. 854,872 – GOODWILL & Design**, issued on August 13, 1968, for "eleemosynary services - namely, training and rehabilitating handicapped people, including instruction in the reconditioning of furniture and appliances," with a date of first use of 1967.

    b.    **Registration No. 1,224,492 – GOODWILL INDUSTRIES**, issued on January 18, 1983, for providing rehabilitation services for handicapped and disadvantaged persons and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for

handicapped, disabled and disadvantaged persons, developing and maintaining operational standards for such organizations," with a date of first use of 1916.

c.      **Registration No. 1,592,248 – GOODWILL & Design,** issued on April 17, 1990, for "providing employment placement services for handicapped, disabled and disadvantaged persons; providing technical aid and assistance, business management and consulting services, executive recruiting services, and developing and maintaining operational standards for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing rehabilitation services for handicapped, disabled and disadvantaged persons; providing legislative and regulatory lobbying services on issues of importance to handicapped, disabled and disadvantaged persons; providing legal services and legal advice to organizations that aid handicapped, disabled and disadvantaged persons; providing research services in the field of rehabilitation, training and employment of handicapped, disabled and disadvantaged persons; and promoting      the interests of and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing fundraising services to benefit handicapped, disabled and disadvantaged persons; and providing financial management services and financial advice to organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing vocational training services for handicapped, disabled and disadvantaged persons; and providing courses and seminars to train and develop personnel for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons," with a date of first use of 1967.

d.      **Registration No. 2,735,803 – SHOPGOODWILL.COM,** issued on July 15, 2003 for "on-line trading services in

which seller posts items to be auctioned and bidding is done electronically; online auction services; online retail store services featuring a full range of consumer goods," with a first use date of August 31, 1999.

e.    **Registration No. 2,775,999 – GOODWILBOOKS.COM,** issued on October 21, 2003 for "online retail store servicces featuring books and periodicals," with a first use date of October 2000.

f.    **Registration No. 2,811,694 – GOODWILL INDUSTRIES,** issued on February 3, 2004 for "retail store services featuring a variety of goods of others," with a first use date of January 15, 1935.

g.    **Registration No. 2,811,695 – GOODWILL & Design,** issued on February 3, 2004, for "retail store services featuring a variety of goods of others," with a first use date of January 23, 1967.

h.    **Registration No. 2,901,330 – GOODWILL STORES & Design,** issued on November 9, 2004, for "retail store services featuring a variety of goods," with a first use date of February 1, 2001.

i.    **Registration No. 3,024,950 – GOODWILL INDUSTRIES INTERNATIONAL, INC. G GOODWILL & Design,** issued on December 13, 2005 for "providing employment placement services for handicapped, disabled and disadvantaged persons; providing technical aid and assistance, business management and consulting services, executive recruiting services, and developing and maintaining operational standards for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing fund raising services to benefit handicapped, disabled and disadvantaged persons; providing financial management services, and financial advice to organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing vocational training services for handicapped, disabled and

disadvantaged persons; providing courses and seminars to train and develop personnel for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing rehabilitation services for handicapped, disabled and disadvantaged persons; providing legislative and regulatory lobbying services on issues of importance to handicapped, disabled and disadvantaged persons; providing legal services and legal advice to organizations that aid handicapped, disabled and disadvantaged persons; providing research services in the field of rehabilitation, training and employment of handicapped, disabled and disadvantaged persons; promoting the interests of and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons," with a first use date of April 19, 2000.

j.     **Registration No. 3,024,951 – GOODWILL INDUSTRIES INTERNATIONAL, INC. (Stylized)**, issued on December 13, 2005, for "providing employment placement services for handicapped, disabled and disadvantaged persons; providing technical aid and assistance, business management and consulting services, executive recruiting services, and developing and maintaining operational standards for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing fund raising services to benefit handicapped, disabled and disadvantaged persons; providing financial management services, and financial advice to organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing vocational training services for handicapped, disabled and disadvantaged persons; providing courses and seminars to train and develop personnel for organizations that provide rehabilitation, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons; providing rehabilitation services for handicapped, disabled

and disadvantaged persons; providing legislative and regulatory lobbying services on issues of importance to handicapped, disabled and disadvantaged persons; providing legal services and legal advice to organizations that aid handicapped, disabled and disadvantaged persons; providing research services in the field of rehabilitation, training and employment of handicapped, disabled and disadvantaged persons; promoting the interests of and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for handicapped, disabled and disadvantaged persons," with a first use date of April 19, 2000.

k.    **Registration No. 3,052,119 – GOODWILL & Design**, issued on January 31, 2006, for "employment agency services, temporary employment agency services, job placement services, career placement and employment counseling all for disabled, handicapped and disadvantaged persons; retail store services featuring a variety of consumer goods of others; career counseling services; providing employment training and vocational rehabilitation, training and guidance services for disabled, handicapped and disadvantaged persons," with a first use date of June 21, 2002.

l.    **Registration No. 3,070,744 – GOODWILL**, issued on March 21, 2006, for "employment services for disabled and disadvantaged persons, namely employment outplacement services, promoting the interests of and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for disabled and disadvantaged persons and for developing and maintaining operational standards for such organization, retail store services featuring a variety of goods of others; providing vocational training for disabled and disadvantaged persons; providing rehabilitation services for disabled and disadvantaged persons," with a first use date of April 1916.

m.  **Registration No. 3,070,887 – "GOOD WILLY" WHERE THERE'S GOODWILL THERE'S A WAY & Design,** issued on March 21, 2006, for "employment services for disabled and disadvantaged persons, namely employment outplacement services, promoting the interests of and encouraging and assisting in the establishment, development and growth of organizations throughout the world dedicated to providing rehabilitation services, training, employment and opportunities for personal growth for disabled and disadvantaged persons and for developing and maintaining operational standards for such organizations, retail store services featuring a variety of goods of others; providing vocational training for disabled and disadvantaged persons; providing rehabilitation services for disabled and disadvantaged persons," with a first use date of December 11, 1950.

n.  **Registration No. 3,324,659 – GOODWILL OPTICAL,** issued on October 30, 2007, for "retail stores featuring eyeglasses; optometry services, namely providing eye exams; optician services," with a first use date of June 15, 2006.

True and correct copies of the certificates of registration for the GOODWILL Marks are attached hereto as Exhibit B and incorporated herein by reference.

21.     Registration Nos. 854,872, 1,224,492 and 1,592,248 are statutorily incontestable as to the services listed therein and are conclusive evidence of the validity of the registered marks, Goodwill's ownership thereof, and of its exclusive right to use the marks in commerce on or in connection with the services identified in the registrations.

22.     Goodwill has invested substantial sums in advertising and promoting the sale of goods and services under the GOODWILL Marks. Based on the extensive, exclusive and continued use of the GOODWILL Marks by Goodwill and its local members, the relevant consuming public has come to recognize and does recognize the GOODWILL Marks as

13079859.2

11

being used by Goodwill and to associate and identify the GOODWILL Marks with Goodwill. The mark GOODWILL is exceptionally valuable to Goodwill because of the goodwill and consumer recognition associated with it. Goodwill has found that its local members meet with immediate acceptance from the general public based upon the name GOODWILL and its widespread reputation in the charitable services market.

23.    The use of Goodwill's trademarks by any of its local members inures to the benefit of Goodwill in accordance with the provisions of Section 5 of the Lanham Act, 15 U.S.C. § 1055.

## EVENTS LEADING TO THIS CONTROVERSY

24.    On or about November 24, 2009, Goodwill was informed of the impending expiration of the registration of the domain name <goodwill.com> and an auction that would take place on December 2, 2009 for ownership of the domain name. Goodwill had been aware that the domain name previously had been owned and used by Goodwill Group, Inc., a Japanese staffing company. Goodwill had no reason to believe that the ownership or use of the <goodwill.com> domain name by Goodwill Group was in bad faith. On information and belief, Goodwill Group has changed its name to Radia Holdings Inc.

25.    Upon learning of the auction from Radia Holdings, Goodwill contacted the registrar of the domain name, Network Solutions, to attempt to prevent the auction from going forward, but was unsuccessful.

26.    On information and belief, Cyber2Media won the auction for the <goodwill.com> domain name and paid approximately $55,000 to Radia Holdings.

13079859.2

27.    On information and belief, the domain name <goodwill.com> was registered by Cyber2Media on or about December 4, 2009, well after the GOODWILL Marks acquired distinctiveness and/or fame. On information and belief, Cyber2Media has and has had full control over the website located at such domain name since registration of the domain name.

28.    On information and belief, Cyber2Media is in the business of acquiring, managing, and developing web properties, including "pay per click" ("PPC") websites. Such a website does not offer any goods or services for sale; instead, it attempts to capitalize on consumers' landing on a website page by offering links to contextually-generated sponsored listings (e.g., generated by the text of the domain name). The owner of the website earns income each time a user "clicks through" to the sponsored listing.

29.    Rather than creating a legitimate website at the Infringing Domain Name, Cyber2Media is attempting to monetize the domain name by "parking" it at a PPC website run by Oversee.net. Attached hereto as Exhibit C is a true and correct copy of print-outs from the Network Solutions "whois" website, showing that the servers at which the Infringing Domain Name is parked are owed by Oversee.net.

30.    Oversee.net describes itself as "the leader in Internet real estate, specializing in monetizing, registering, selling and developing domain names. The company's unique optimized technology connects consumers and advertisers with highly relevant advertisements." *See* <oversee.net/about>.

31.    As seen by the screen prints of the site attached hereto as Exhibit D, Oversee.net has assisted Cyber2Media in monetizing the Infringing Domain Name by designing a website consisting solely of searches generated by reference to the term

13079859.2

13

"goodwill" and, once "clicked" through, to sponsored listings. These listings are, in many cases, from entities that are related, and directly competitive to, the services and goods provided by Goodwill. For example, the home page of the website lists "related searches" such as: (1) car donation; (2) donate to charity; (3) donate furniture; (3) vehicle donation; and (4) clothing donation – activities that the public has come to associate with Goodwill and its local members.

32.    Clicking through on these related searches on the parked site brings up rotating sponsored listings for entities that offer directly competitive services to Goodwill – such as <kars4kids.org> (soliciting charitable donations for disadvantaged children); <successcampaign.com> (soliciting charitable donations for to help disadvantaged women by providing professional attire, a network of support and career development tools); <unicefusa.org> (soliciting charitable donations for UNICEF's campaign to help children); <StJude.org> (soliciting charitable donations for St. Jude Children's Hospital).

33.    Therefore, consumers looking for Goodwill and its local members to make charitable contributions are likely to become confused by the <goodwill.com> website, and be siphoned off to make contributions to other charities. Moreover, consumers may become confused and believe that such charities are sponsored by or affiliated with Goodwill, which they are not.

34.    Because these events are occurring during one of Goodwill's busiest times of the year, confusion between Goodwill's donation activities and the activities of Cyber2Media and Oversee.net is likely to result in lost donations, sales and loss of goodwill during this critical period and are acutely harmful to Goodwill now and in the future, if not enjoined.

13079859.2

14

35.    The use of the domain name <goodwill.com> so resembles the GOODWILL Marks and Goodwill's GOODWILL-formative trade names in terms of appearance, sound, connotation and/or commercial impression, as to be likely, when applied to the advertising services of Cyber2Media, to cause confusion or mistake, or to deceive.

36.    On information and belief, Cyber2Media's and Oversee.net's registration and/or use of the Infringing Domain Name <goodwill.com> was registered and is being used in bad faith.

37.    Cyber2Media and Oversee.net, at the time they first adopted and first used the Infringing Domain Name, were on constructive notice, pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072, of the existence of Goodwill's superior rights in its GOODWILL Marks by reason of the existence, at that time, of Goodwill's aforestated federal service mark registrations.

38.    On information and belief, Cyber2Media and Oversee.net, at the time they adopted and first used the Infringing Domain Name, had actual knowledge of and were on actual notice of Goodwill's prior and superior rights in one or more of its GOODWILL Marks.

39.    Goodwill's GOODWILL Marks were famous and/or distinctive at the time of the Cyber2Media's registration of the Infringing Domain Name.

40.    On information and belief, by registering and/or using a domain name containing Goodwill's trademarks, Cyber2Media and Oversee.net are attempting to trade on the goodwill of Goodwill.

41.    Cyber2Media's and Oversee.net's activities as stated herein are carried out in interstate commerce and affect the business activities of Goodwill carried out in interstate commerce.

42.    By registering and/or using a domain name containing Goodwill's trademarks, Cyber2Media and Oversee.net are attempting to create an association between the Infringing Domain Name and the GOODWILL Marks.

43.    Upon information and belief, Cyber2Media and Oversee.net have no trademark or other intellectual property rights in a GOODWILL-formative mark.

44.    Upon information and belief, Cyber2Media and Oversee.net have not made any use of a GOODWILL-formative mark in connection with the *bona fide* offering of goods and services.

45.    Upon information and belief, Cyber2Media and Oversee.net intend to divert customers from Goodwill's and its local members' websites to the Infringing Domain Name in a manner that will harm the goodwill represented by the GOODWILL Marks.

46.    Upon information and belief, Cyber2Media and Oversee.net did and do not believe or have reasonable grounds to believe that the use of the Infringing Domain Name is a fair use or otherwise lawful.

47.    Upon information and belief, Cyber2Media and Oversee.net have registered, trafficked in, and/or used in interstate commerce the domain name <goodwill.com> without authorization from Goodwill with the bad faith intent of profiting off the GOODWILL Marks by misleading or deceiving the public into believing that Goodwill is associated or affiliated with, or sponsors or endorses, Cyber2Media, Oversee.net, their services, and website.

13079859.2

## WRITTEN NOTICE TO REGISTRAR

48.     Pursuant to 15 U.S.C. Section 1125(d)(2)(D)(i) Goodwill has or is in process of notifying the registrar, Network Solutions, Inc., of this action by providing it with written notice of a filed, stamped copy of this complaint as filed.  As a result thereof, pursuant to said Section 1125(d)(2)(D), the registrar is required to: "(i) expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and (ii) not to transfer, suspend or otherwise modify the domain name during the pendency of the action."

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

49.     Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 48 above.

50.     Cyber2Media and Oversee.net's activities as described herein constitute direct infringement of Goodwill's federally registered trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for which Goodwill has no adequate remedy at law.

51.     By such activity, Cyber2Media and Oversee.net have caused, are causing and will continue to cause irreparable injury and harm to Goodwill's businesses, reputation and goodwill, unless such activity by Cyber2Media and Oversee.net is enjoined.

52.     In view of the blatant nature of Cyber2Media and Oversee.net's infringement and unfair competition, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a) and Goodwill is entitled to recover exemplary damages and reasonable attorneys fees and costs incurred in connection with this action.

13079859.2

## COUNT II
## FEDERAL UNFAIR COMPETITION

53.     Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 52 above.

54.     Cyber2Media's and Oversee.net's activities as described herein constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for which Goodwill has no adequate remedy at law.

55.     By such activity, Cyber2Media and Oversee.net have caused, are causing and will continue to cause irreparable injury and harm to Goodwill's businesses, reputation and goodwill, unless such activity by Cyber2Media and Oversee.net is enjoined.

## COUNT III
## ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT

56.     Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 55 above.

57.     Cyber2Media's and Oversee.net's activities as described herein constitute a violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. 1125(d), for which Goodwill has no adequate remedy at law.

58.     By such activity, Cyber2Media and Oversee.net have caused, are causing and will continue to cause irreparable injury and harm to Goodwill's businesses, reputation and goodwill, unless such activity by Cyber2Media and Oversee.net is enjoined.

13079859.2

## COUNT IV
## COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

59.     Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 58 above.

60.     Cyber2Media's and Oversee.net's acts as stated herein constitute trademark infringement and unfair competition under the common law of the Commonwealth of Virginia and/or other states, for which Goodwill has no adequate remedy at law.

61.     By such activity, Cyber2Media and Oversee.net have caused, are causing and will continue to cause irreparable injury and harm to Goodwill's business, reputation and goodwill unless such activity by Cyber2Media and Oversee.net is enjoined.

## COUNT V
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

62.     Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 61 above.

63.     Upon information and belief, at and since the time that Cyber2Media and Oversee.net adopted and began using Goodwill's name and marks, Cyber2Media and Oversee.net knew and have known that Goodwill is in the business of soliciting charitable donations to fund its mission.

64.     Upon information and belief, Cyber2Media and Oversee.net committed acts intended or designed to disrupt Goodwill's prospective economic advantage arising from advertising and/or providing these services.

13079859.2

19

65.    Cyber2Media's and Oversee.net's acts have disrupted or, on information and belief, are intended to disrupt, Goodwill's business by diverting consumers away from Goodwill's legitimate websites.

66.    Neither Cyber2Media nor Oversee.net have any legal right, privilege or justification for their conduct.

67.    As a direct and proximate result of Cyber2Media's and Oversee.net's intentional interference with Goodwill's prospective economic advantage, Goodwill has suffered, and will continue to suffer, monetary damage and/or irreparable injury, for which Goodwill has no adequate remedy at law.

68.    Based on the malicious, intentional and willful nature of Cyber2Media's and Oversee.net's actions, Goodwill is entitled to recover exemplary damages and reasonable attorneys fees and costs incurred in connection with this action.

## COUNT VI
## UNJUST ENRICHMENT

69.    Goodwill re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 68 above.

70.    Cyber2Media's and Oversee.net's actions as described hereinabove have been committed with the purpose and effect of unjustly benefiting from Goodwill's goodwill and reputation and for the purpose of giving Cyber2Media's and Oversee.net's services a marketability to which they are not entitled and to which they otherwise would not have in violation of state law, including without limitation, that of Virginia and/or other states in which Cyber2Media's and Oversee.net's services are advertised and/or provided.

13079859.2

71.    Cyber2Media's and Oversee.net's actions as described hereinabove have resulted in and are likely to further result in, unjust enrichment of Cyber2Media and Oversee.net at the expense of Goodwill, which is likely to continue unless Cyber2Media's and Oversee.net's conduct is enjoined.

### PRAYER FOR RELIEF

WHEREFORE Goodwill prays the Court as follows:

a)  That Cyber2Media and Oversee.net, their affiliates, officers, agents, servants, employees, attorneys and those persons in active concert or participation with them be preliminarily and permanently restrained and enjoined from any and all further use of the designation GOODWILL, the GOODWILL Mark or any confusingly similar variations thereof, including the registering, owning, leasing, selling or trafficking in any domain names containing designation GOODWILL, the GOODWILL Mark or any confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

b)  That the domain name <goodwill.com> be transferred to Goodwill;

c)  That Goodwill recover such actual damages sustained in such sums as shall be hereafter proven and assessed together with interest thereon, trebled;

d)  That Goodwill recover exemplary damages in an amount to be determined at trial;

e)  That Goodwill recover statutory damages pursuant to 15 U.S.C. § 1117(d);

f)  That Cyber2Media and Oversee.net account to Goodwill for its sales and profits on services provided through or by means of the Infringing Domain Name;

13079859.2

g) That all papers, documents, advertising materials, signs and any or all other materials utilizing the designation GOODWILL be destroyed or delivered to the Court for destruction;

h) That the costs of this action, including a reasonable attorneys' fee for Goodwill's attorneys, be taxed against Cyber2Media and Oversee.net; and

i) That the Court grants such other and further relief as it may deem just and proper.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Dated: December 11, 2009                 Respectfully submitted,

**GOODWILL INDUSTRIES INTERNATIONAL, INC.**

By:  *Rebecca L. Saitta*
Rebecca Saitta, Va. Bar No. 65408
WILEY REIN LLP
7925 Jones Branch Drive
Suite 6200
McLean, VA 22102
Telephone 703-905-2800
Fax 703-905-2820
rsaitta@wileyrein.com

Attorney for Plaintiff

Of Counsel:

Christopher Kelly
Jennifer L. Elgin
Wiley Rein LLP
1776 K Street N.W.
Washington, D.C. 20006
Telephone 202-719-7000
Fax 202-719-7049

13079859.2